UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MELANIE FEDELE, individually and on behalf of others
similarly situated,

                        Plaintiff,

           v.

MARIST COLLEGE,

                        Defendant.

Civil Action No.
1:20-cv-3559 (VB)

## MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS WITH PREJUDICE PURSUANT TO RULE 12(b)(6) OF THE FEDERAL RULES OF CIVIL PROCEDURE

**BOND SCHOENECK & KING, PLLC**
600 Third Avenue, 22nd Floor
New York, NY 10016
(646) 253-2330

178530.1 10/16/2020

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ........................................................................................ 1

BACKGROUND ............................................................................................................... 2

ARGUMENT  STANDARD FOR RULE 12(b)(6) DISMISSAL .................................... 4

POINT I
PLAINTIFF'S BREACH OF CONTRACT CLAIMS MUST BE DISMISSED.............. 5

A.  Plaintiff's Breach of Contract Claim Must Be Dismissed Because It Fails For Lack of
A Specific Contractual Promise .................................................................................... 5

B.  Plaintiff's Breach of Contract Claim Must Be Dismissed Because New York Courts
Do Not Recognize Claims for "Educational Malpractice" ......................................... 11

C.  Plaintiff's Breach of Contract Claim for Fees Is Fatally Flawed And Must Be
Dismissed .................................................................................................................... 14

POINT II
PLAINTIFF'S UNJUST ENRICHMENT CLAIM MUST BE DISMISSED.................. 16

POINT III
PLAINTIFF'S CONVERSION CLAIM MUST BE DISMISSED ................................. 17

POINT IV
PLAINTIFF'S MONEY HAD AND RECEIVED CLAIM MUST BE DISMISSED ..... 19

CONCLUSION................................................................................................................ 21

178530.1 10/16/2020

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*André v. MARIST Univ.*,
  170 Misc. 2d 893 (2d Dept. 1996) ......................................................................................13

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)..............................................................................................................4

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007)..............................................................................................................5

*Bianco v. Bianco*,
  36 A.D.3d 490 (1st Dept. 2007)...........................................................................................9

*Carr v. St. John's Univ.*,
  17 A.D.2d 632 (2d Dept. 1962), *aff'd on opinion below*, 12 N.Y.2d 802 (1962).....................6

*Chambers v. Time Warner, Inc.*,
  282 F.3d 147 (2d Cir. 2002)..................................................................................................3

*Charles Ramsey Co. v Fabtech-NY LLC*,
  2020 U.S. Dist. LEXIS 9348 (N.D.N.Y. Jan. 21, 2020)..........................................................20

*Cheves v. Trustees of Columbia Univ.*,
  89 A.D.3d 463 (1st Dept. 2011).....................................................................................10, 11

*Chung v Sano*,
  2011 U.S. Dist. LEXIS 34989 (E.D.N.Y. Mar. 31, 2011) ......................................................18

*Citadel Mgmt., Inc. v. Telesis Tr., Inc.*,
  123 F. Supp. 2d 133 (S.D.N.Y. 2000)..................................................................................17

*Conley v. Gibson*,
  355 U.S. 41 (1957)................................................................................................................4

*Cooper v. Parsky*,
  140 F.3d 433 (2d Cir. 1998).................................................................................................4

*Curto v. Edmundson*,
  392 F.3d 502 (2d Cir. 2004).................................................................................................4

*Faiaz v. Colgate Univ.*,
  64 F. Supp. 3d 336 (N.D.N.Y. 2014).................................................................................8, 10

*Fesseha v. TD Waterhouse Inv. Servs., Inc.*,
  305 A.D.2d 268 (1st Dep't 2003) .......................................................................................17

*Fischer v Graham*,
    2016 U.S. Dist. LEXIS 72749 (S.D.N.Y. June 3, 2016)........................................................20

*Gally v. Columbia Univ.*,
    22 F. Supp. 2d 199 (S.D.N.Y. 1998)......................................................................8, 10, 12, 13

*Global View Ltd. Venture Capital v. Great Cent. Basin Exploration, L.L.C.*,
    288 F. Supp. 2d 473 (S.D.N.Y. 2003)...........................................................................................18

*Habitzreuther v. Cornell Univ.*,
    5:14-cv-1229, 2015 U.S. Dist. LEXIS 112209 (N.D.N.Y. Aug. 25, 2015)........................5, 13

*Jeffers v. American Univ. of Antigua*,
    125 A.D.3d 440 (1st Dept. 2015)...........................................................................................16, 17

*Jones v. Trustees of Union Coll.*,
    92 A.D.3d 997 (3d Dept. 2012) ..............................................................................................8

*Kaye v. Grossman*,
    202 F.3d 611 (2d Cir. 2000)..................................................................................................16

*Keefe v. New York Law Sch.*,
    71 A.D.3d 569 (1st Dept. 2010)..............................................................................................8

*Knelman v. Middlebury Coll.*,
    898 F. Supp. 2d 697 (D. Vt. 2012).........................................................................................10

*Koppel v. 4987 Corp.*,
    167 F.3d 125 (2d Cir. 1999)....................................................................................................4

*Litvinoff v Wright*,
    150 A.D.3d 714 (2d Dept 2017) .............................................................................................19

*Lloyd v. Alpha Phi Alpha Frat.*,
    96-cv-348, 1999 U.S. Dist. Lexis 906 (N.D.N.Y Jan. 26, 1999).............................................8

*Maas v. Cornell University*,
    94 N.Y.2d 87 (1999) ...............................................................................................................7

*Matzan v. Eastman Kodak Co.*,
    134 A.D.2d 863 (4th Dep't 1987) ...........................................................................................18

*Nat'l Westminster Bank PLC v. Grant Prideco, Inc.*,
    261 F. Supp.2d 265 (S.D.N.Y. 2003)......................................................................................19

*Olsson v. Bd. of Higher Educ.*,
    49 N.Y.2d 408 (1980) .............................................................................................................12

178530.1 10/16/2020

*Paladino v. Adelphi Univ.*,
   89 A.D.2d 85 (2d Dept. 1982) ...........................................................................13

*Panix Promotions, Ltd. v. Lewis*,
   No. 01-Civ-2709, 2002 U.S.Dist. LEXIS 7176 (S.D.N.Y. Jan. 22, 2002) .......................19, 20

*Papelino v. Albany College of Pharmacy*,
   633 F.3d 81 (2d Cir. 2011)......................................................................2, 8, 12

*Parsa v. State*,
   64 N.Y.2d 143 (1984) ...................................................................................19

*Paynter v. New York Univ.*,
   66 Misc. 2d 92 (1st Dept. 1971) .........................................................................10

*Prasad v. Cornell Univ.*,
   5:15-cv-322, 2016 U.S. Dist. LEXIS 161297 (N.D.N.Y. Feb. 24, 2016)................................8

*Richter v. Catholic University of America*,
   No. 18-00583, 2019 U.S. Dist. LEXIS 20150 (D.D.C. Feb. 5, 2019) .....................................8

*Rolph v. Hobart & William Smith Colls.*,
   271 F. Supp. 3d 386 (W.D.N.Y. 2017)...................................................................10

*Shafferman v. Queens Borough Pub. Lib. (In re JMK Constr. Group, Ltd.)*,
   502 BR 396 (Bankr S.D.N.Y. 2013).....................................................................18

*Tedeschi v. Wagner College*,
   49 N.Y.2d 652 (1980) ................................................................................2, 6, 7

*Thyroff v. Nationwide Mut. Ins. Co.*,
   8 N.Y.3d 283 (2007)...................................................................................17

*Traffix, Inc. v Herold*,
   269 F Supp 2d 223 (SDNY 2003) .........................................................................20

**Other Authorities**

Executive Order 202.6 ...............................................................................3, 6, 9

https://esd.ny.gov/guidance-executive-order-2026.........................................................3

Rule 12(b)(6)...................................................................................... *passim*

*Webster's 3d New Int'l Dictionary* (1993)..................................................................9

## PRELIMINARY STATEMENT

Defendant Marist College ("MARIST") submits this memorandum of law in support of its motion pursuant to Rule 12(b)(6) for dismissal of the entirety of the Complaint ("Complaint") filed by Melanie Fedele ("Fedele" or "Plaintiff").

Fedele, a May 2020 graduate of MARIST who received her Bachelor in Science ("B.S.") degree in Business Administration and Fashion Merchandising with *cum laude* honors, filed this putative class action. She seeks to recover damages for, *inter alia,* breach of contract in light of the global COVID-19 pandemic, and as required by mandatory state closure orders, because MARIST transitioned to remote instruction in the middle of this year's Spring Term. Plaintiff, however, continued in her chosen course of instruction for the entirety of the Spring Term, received the benefit of instruction from the same MARIST faculty who were teaching her courses before the state-mandated shutdown of on-campus instruction, was awarded credits for those courses, and graduated with her B.S. degree without interruption. Her principal complaint is that as result of the pandemic and the state-mandated shutdown, she was not afforded in-person contact with her classmates and faculty as she had in other semesters. Plaintiff makes no allegations that her academics were affected in any way.

Plaintiff's action must be dismissed because although MARIST had to quickly pivot to remote instruction due to the pandemic, she has received everything she bargained for when she enrolled at MARIST-- instruction in her chosen courses by MARIST faculty and, upon completion of her course work, a MARIST degree. With respect to remote instruction, Plaintiff does not seek to enforce any specific promise made by MARIST with respect to how classes would be conducted, instead, she asks that this Court create a contract prohibiting remote instruction absent a discount or refund. No such contract exists.

Inherent in Plaintiff's Complaint is a request that the Court review the instruction that was provided following the shutdown, evaluate the "worth" of that instruction as compared to on-campus instruction, and arrive at a "contractual" price for that instruction. New York courts have steadfastly refused to enter the realm of academic decision making. They have refused to substitute their judgment for that of the academic officials who govern the state's higher education institutions. While many decisions have identified that the relationship between a student and a college or university is contractual, the New York Court of Appeals has cautioned that in analyzing the relationship between a student and a college, "contract theory is not wholly satisfactory." *Tedeschi v. Wagner College,* 49 N.Y.2d 652, 658 (1980).  Accordingly, courts in New York will only enforce <u>specific</u> promises "contained in the university's bulletins, circulars and regulations." *Papelino v. Albany College of Pharmacy,* 633 F.3d 81, 92 (2d Cir. 2011).  Here, Plaintiff has identified no <u>specific</u> promises breached by MARIST and the Court should, therefore, dismiss the Complaint with prejudice.

## BACKGROUND

Plaintiff's original complaint was filed on May 7, 2020. Docket No. 1.  The original complaint contained causes of action for breach of contract, unjust enrichment, and conversion. MARIST has answered this complaint on September 8, 2020 ("Answer"). Docket No. 15. Thereafter, on September 29, 2020, Plaintiff amended her complaint ("Complaint") adding a fourth claim for "money had and received."  Docket No. 20.  The MARIST now seeks dismissal of the Complaint pursuant to Rule 12 (b)(6).

Classes for the MARIST 2020 Spring Term began on January 20, 2020.  Answer, Exhibit B.  On March 20, 2020, MARIST announced that because of concerns caused by the spread of the novel coronavirus and the state-mandated shut down, beginning on March 30, 2020, MARIST

2

would be conducting instruction remotely with the same professors and classmates that the students had been studying with previously. Answer, Exhibit D.

MARIST's announcement coincided with government actions. On March 13, 2020, the President of the United States declared a National Emergency in connection with the pandemic.[1] On March 20, 2020, the same day as MARIST's announcement, New York Governor Andrew Cuomo issued Executive Order 202.6, mandating a statewide shutdown of non-essential businesses. Answer, ¶4, Exhibit A. Guidance issued by New York State made it clear that Executive Order 202.6 allowed private institutions to provide "remote instruction or streaming of classes… provided, however, that *no in person congregate classes are permitted*." New York Department of Economic Development, Guidance for Determining Whether a Business is Subject to a Workforce Reduction Under Recent Executive Orders, last updated June 29, 2020 (emphasis supplied).[2]

No MARIST document, catalog, policy or procedure, promises that instruction will always be in-person and on-campus, much less includes a statement that such on-campus instruction will take place in the midst of a global pandemic and in violation of state closure mandates.

Plaintiff's Complaint does not challenge the necessity of MARIST's actions and does not dispute that MARIST's transition to remote instruction was required by the State of New York and to protect the health of MARIST students, faculty and staff.  Nor does Plaintiff allege that she did not receive instruction through the end of the Spring Semester, did not receive full credit for the classes she completed, or did not graduate with her B.S. degree without interruption.

---

[1]   The Court may take judicial notice of government actions in connection with a motion to dismiss. *Chambers v. Time Warner, Inc.,* 282 F.3d 147, 153 (2d Cir. 2002).

[2]   *Id.  See also* https://esd.ny.gov/guidance-executive-order-2026.

178530.1 10/16/2020

Further, Plaintiff continued in her courses, earned credits, and graduated with her intended

degree. Answer Third Defense, Exhibit E.  Instead of alleging that her instruction did not continue,

Plaintiff alleges *only* that she was "deprived of the opportunity for collaborative learning and in-

person dialogue, feedback, and critique." Complaint, ¶11.  Plaintiff does not contest that

continuing with in classroom instruction was rendered impossible by the global pandemic and the

state-ordered shutdown; rather, she alleges, that MARIST is contractually obligated to adjust her

tuition and fees to compensate her for the loss of in-person instruction which was completely out

of MARIST's control.

## ARGUMENT

## STANDARD FOR RULE 12(b)(6) DISMISSAL

The Court should dismiss a claim pursuant to Rule 12(b)(6) where, as here, it "appears

beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle

him to relief." *Conley v. Gibson,* 355 U.S. 41, 45-46 (1957); *Curto v. Edmundson,* 392 F.3d 502,

503 (2d Cir. 2004).  In ruling on a motion under Rule 12(b)(6) a federal district court is "required

to accept as true all factual allegations in the complaint" and must construe the complaint in the

light most favorable to the plaintiff.  *Koppel v. 4987 Corp.,* 167 F.3d 125, 127 (2d Cir. 1999).  *See

also Cooper v. Parsky,* 140 F.3d 433, 440 (2d Cir. 1998).

To survive dismissal for failure to state a claim, the complaint must contain sufficient

factual matter, accepted as true, to state a claim that is "plausible on its face." *Ashcroft v. Iqbal*,

556 U.S. 662, 678 (2009) (*quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

"Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements,

do not suffice."  A plaintiff's factual allegations must also be sufficient to give the defendant "'fair

notice of what the ... claim is and the grounds upon which it rests.'" *Bell Atl. Corp.*, 550 U.S. at 555.

As explained below, on the basis of the above Rule 12(b)(6) standard of review, the Complaint should be dismissed in its entirety and with prejudice.

## POINT I

## PLAINTIFF'S BREACH OF CONTRACT CLAIMS MUST BE DISMISSED

### A. Plaintiff's Breach of Contract Claim Must Be Dismissed Because It Fails For Lack of A Specific Contractual Promise

Plaintiff alleges that she entered into a contract with MARIST for in-person instruction and that MARIST breached the alleged contract when it moved to online instruction due to the COVID-19 pandemic and New York State's mandatory closure orders.  Complaint, ¶¶50-51.  Plaintiff asks the Court to award damages for the "reimbursement of tuition, fees, and other expenses that were collected by Defendant for services that Defendant has failed to deliver.  Defendant should return the pro-rated portion of any Spring Semester 2020 tuition and fees for education services not provided…."  Complaint, ¶54.

Plaintiff, of course, does not allege any written contractual agreement in support of her claims.  The implied contract claimed by Plaintiff is contrary to well-established New York law governing the relationship between a student and a college or university.  Although numerous decisions state that the basis of the legal relationship between a college and its student is contractual, as explained below, the New York Court of Appeals has uniformly stated that contractual claims by students against a college are extremely limited.

A breach of contract claim by a student against a university must allege breach of a specific promise by the university.  *See, e.g., Habitzreuther v. Cornell Univ.*, 5:14-cv-1229, 2015 U.S. Dist.

178530.1 10/16/2020

LEXIS 112209, at *10-11 (N.D.N.Y. Aug. 25, 2015).  Plaintiff's contractual claims fail here for two independent reasons: First, Plaintiff cannot identify any specific promise or guarantee of on-campus instruction (let alone a promise to continue on-campus instruction in the face of a pandemic and a state-mandated shutdown of the campus) in MARIST's literature, including course catalogs.  Second, inherent in Plaintiff's allegations is that this Court has discretion to conduct an evaluation of MARIST's remote instruction during the second half of the Spring 2020 Semester, arrive at a judgment of its value, and order a reimbursement of tuition and fees based on this evaluation.[3]  MARIST's administration concluded that instruction could and should continue remotely through the Spring 2020 Semester (consistent with NYS Executive Order 202.6), and that the completion of such instruction would be sufficient to earn credits toward a MARIST degree.  Under New York law, it is not for this Court to evaluate the academic programming offered by MARIST in the face of the pandemic and determine its worth.

The New York Court of Appeals has recognized  that "[w]hen a student is duly admitted by a private university, secular or religious, there is an implied contract between the student and the university that, if he complies with the terms prescribed by the university, he will obtain the degree which he sought." *Carr v. St. John's Univ.*, 17 A.D.2d 632, 633 (2d Dept. 1962), *aff'd on opinion below*, 12 N.Y.2d 802 (1962). The Court of Appeals provided further illumination of the relationship between a college and its students in *Tedeschi v. Wagner Coll.*, 49 N.Y.2d 652 (1980). In *Tedeschi*, the Court of Appeals reinstated a student who had been dismissed from Wagner

---

[3]        The highly subjective determination of the "value" of in-person instruction would vary significantly by individual student, making Plaintiff's efforts to represent a class of students dubious.  Students at MARIST have different programs and experiences: many enroll in classes that are taught fully by lecture and do not involve any "hands-on" work.  Others may not engage in activities on campus that arguably require physical presence. The "value" of this "face-to-face" experience will vary greatly depending on the student. The prospect of such a student-by-student evaluation demonstrates that class certification of the claims herein would be highly problematic.  It also demonstrates why New York courts have declined to entertain the type of "breach of contract" claims asserted by Plaintiff here.

178530.1 10/16/2020

College without a hearing, holding that "when a university has adopted a rule or guideline establishing the procedure to be followed in relation to suspension or expulsion that procedure must be substantially observed."  49 N.Y.2d at 660.  Wagner College had published such a hearing requirement in a document it published entitled "1976-1977 Guidelines of Wagner College."  49 N.Y.2d at 657. The Court of Appeals noted, however, that "contract theory is not wholly satisfactory" in defining the relationship between a student and a university:

> Contract theory is not wholly satisfactory, however, because the essentially fictional nature of the contract results in its generally being assumed rather than proved, because of the difficulty of its application, and because it forecloses inquiry into, and a balancing of, the countervailing interests of the student on the one hand and the institution on the other.

49 N.Y.2d at 658 (citation omitted).

The Court of Appeals reiterated the limited usefulness of contract theory in higher education cases in *Maas v. Cornell University*, 94 N.Y.2d 87 (1999).  The Court of Appeals noted that courts only "retain a restricted role in dealing with and reviewing controversies involving colleges and universities."  94 N.Y.2d at 92.  The Court of Appeals also described the limited reach of breach of contract claims by students:

> In the context of the relationship between a university and a student, this Court in *Tedeschi* held that "when a university has adopted a rule or guideline establishing the procedure to be followed in relation to suspension or expulsion that procedure must be substantially observed." We explicitly cautioned that the legal theory upon which this rule emerges is, however, not well defined, and that the "[c]ontract theory is not wholly satisfactory". Further, we concluded that "[s]o much of the complaint as sought money damages and the right to a due process hearing based on claimed 'state action' was properly dismissed'. Therefore, *Tedeschi* provides no support for Maas' claim under the alleged breach of contract theory.

94 N.Y.2d at 94-95 (internal citations omitted).

178530.1 10/16/2020

Courts have steadfastly followed the admonition of the New York Court of Appeals that the terms of a contract between a college and a student should not be assumed.  Accordingly, courts have limited contractual claims to enforcement of specific promises "'contained in the university's bulletins, circulars and regulations.'"  *Papelino v. Albany Coll. of Pharm.*, 633 F.3d 81, 93 (2d Cir. 2011) (quoting *Vought v. Teachers Coll., Columbia Univ.*, 127 A.D.2d 654, 654 (2d Dept. 1987)); *Keefe v. New York Law Sch.*, 71 A.D.3d 569, 570 (1st Dept. 2010) ("However, only specific promises set forth in a school's bulletin, circulars and handbooks, which are material to the student's relationship with the school, can establish the existence of an implied contract.").

Courts have dismissed an implied breach of contract claim where, as here, the student failed to allege specific promises.  *Lloyd v. Alpha Phi Alpha Frat.*, 96-cv-348, 1999 U.S. Dist. Lexis 906 (N.D.N.Y Jan. 26, 1999).  *See also Gally v. Columbia Univ.*, 22 F. Supp. 2d 199, 207 (S.D.N.Y. 1998); *Faiaz v. Colgate Univ.*, 64 F. Supp. 3d 336, 359 (N.D.N.Y. 2014); *Jones v. Trustees of Union Coll.*, 92 A.D.3d 997, 999 (3d Dept. 2012).  In *Gally*, *Faiaz* and *Jones*, the courts likewise granted dismissal of breach of contract claims where the student failed to "identify the specific terms of the implied contract that he claims were violated by the College."  *Jones*, 92 A.D.3d at 999.[4]  Similarly, in *Prasad v. Cornell Univ.*, 5:15-cv-322, 2016 U.S. Dist. LEXIS 161297 (N.D.N.Y. Feb. 24, 2016), the court dismissed a breach of contract claim against Cornell University where the student plaintiff failed to allege a specific contractual promise that had been breached by Cornell.  *Prasad*, 2016 U.S. Dist. LEXIS 161297, at *63.

---

[4]     Courts in other jurisdictions take the same approach.  For example, in *Richter v. Catholic University of America*, No. 18-00583, 2019 U.S. Dist. LEXIS 20150 (D.D.C. Feb. 5, 2019), the plaintiff, relying on documents outlining students' obligations, argued that the university entered into an enforceable contract whereby it guaranteed the plaintiff the "right to meet regularly" with his professors to give the plaintiff the "best chance possible to improve his grades." *Id.* at *10-*11. The court dismissed the plaintiff's breach of contract claim with prejudice, noting that the notion that the university "somehow bound itself contractually [to these specific items] borders on the absurd." *Id.* at *11.

178530.1 10/16/2020

In seeking a pro-rated reduction of her "tuition," Plaintiff is asking the Court to create a new definition of "tuition," i.e., that it is a payment for the extrinsic benefits of an in classroom learning experience.   The dictionary definition of "tuition" is: "payment for instruction." *Webster's 3d New Int'l Dictionary* (1993).   New York courts have applied this dictionary definition when interpreting the meaning of "tuition."   *Bianco v. Bianco*, 36 A.D.3d 490, 491 (1st Dept. 2007) (agreement to pay for "tuition" only applied to the charge for instruction).   Here, Plaintiff is seeking this Court to ignore the definition of tuition and instead quantify an "experience."[5]

MARIST met the terms of any implied contract with its students:   It continued to provide Plaintiff with instruction by the same MARIST faculty, with the same students, following the state-ordered shutdown of its campus.   Plaintiff took advantage of that instruction, earned credits for the courses she completed, and graduated with her B.S. degree.   Plaintiff cites no requirement in the MARIST Catalog or any other document that instruction must be provided in a physical classroom setting.   Plaintiff only cites to the course catalog, an online class registration system, a faculty handbook and marketing material that, of course, anticipated that classes would be provided in person.   However, in-class instruction and other in-person activities were prohibited by the mandatory Executive Orders of the Governor of the State of New York including Executive Order 202.6.  Answer, Exhibit A.

It is hard to imagine a more compelling reason to modify the educational program than to protect the health of MARIST students, faculty, and staff during a global pandemic, and to comply with a state-mandated shutdown of the MARIST campus.[6]   Moreover, the law does *not* allow

---

[5]        In the Spring 2020 semester, as well as semesters pre-dating the COVID-19 pandemic, MARIST offered remote learning courses for the same tuition and rates as in-person classes.  Answer, ¶22.

[6]        MARIST's answer (Docket No. 15) asserts the defense of impossibility.  Plaintiff cannot seriously contest that it was impossible to continue on-campus instruction in the face of the global pandemic and a government-ordered shutdown of in class instruction.

178530.1 10/16/2020

Plaintiff to retain the benefits *after* she ratified MARIST's conduct and then seek a refund. Allowing that would amount to a wholesale rewriting of the bargain and unjustly enrich *Plaintiff* by allowing her to receive the education, credits, and degree for a reduced price after receiving the benefits from MARIST. There is no basis in law that would allow such a result, and Plaintiff's claim should be dismissed with prejudice.

A claim similar to Plaintiff's was rejected in *Paynter v. New York Univ.*, 66 Misc. 2d 92 (1st Dept. 1971). In *Paynter*, NYU had suspended classes in May 1970 following campus unrest over United States troops entering Cambodia and the deaths of students at Kent State University. Of course, there was no technology to provide remote instruction in 1970, and the classes just stopped. The lower court had ordered a tuition refund based on the cancellation of the final 19 days of classes at NYU. The Appellate Term reversed, holding that "the services rendered by the university cannot be measured by the time spent in a classroom." *Id.*, at 92. The Appellate Term further noted that it was not for the courts to substitute their judgment for that of the school's administrators that classes could not continue. *Id.,* at 92-93.

Unable to find any specific promise, Plaintiff simply alleges that MARIST "markets" the benefits of on-campus student life. Complaint, ¶31. However, the courts have routinely refused to enforce aspirational goals in documents published by colleges and universities as part of an implied contract with the school's students. *See, e.g., Faiaz v. Colgate Univ.*, 64 F. Supp. 3d at 360; *Rolph v. Hobart & William Smith Colls.*, 271 F. Supp. 3d 386, 407 (W.D.N.Y. 2017); *Knelman v. Middlebury Coll.*, 898 F. Supp. 2d 697, 709 (D. Vt. 2012); *Gally*, 22 F. Supp. 2d at 208; *see also Cheves v. Trustees of Columbia Univ.*, 89 A.D.3d 463 (1st Dept. 2011). In *Cheves*, the First Department affirmed dismissal of a breach of contract claim by an alumnus of Columbia who had been banned from the campus. The First Department followed the oft-stated rule that "only **specific** promises set forth in a school's bulletins, circulars, and handbooks, which are

178530.1 10/16/2020

material to the student's relationship with the school, can establish the existence of an implied contract." 89 A.D.3d at 464 (quoting *Keefe*, 71 A.D.3d at 570) (emphasis supplied).  The First Department rejected the plaintiff's assertion that statements in an alumni brochure describing benefits available to alumni were the type of specific promises that could be enforced under an implied contract theory.  Similarly, here, the statements on MARIST's website about the on-campus experience at MARIST are not legally enforceable promises that instruction will be delivered on-campus even in the face of a global pandemic and a state-ordered shutdown of the MARIST campus.

MARIST fully agrees that, in the absence of a global pandemic, the on-campus and in class learning experiences normally provided by MARIST may have been preferable to some students, over the remote instruction provided since the forced closure of the campus.  However, the pandemic created a reality to which everyone had to adapt.  MARIST has met its contractual obligations to its students by adapting to the mandate for remote instruction consistent with the Government Orders, and it provided Plaintiff instruction with the same MARIST faculty who were providing instruction before the pandemic, and by awarding credits to the students who have completed the prescribed course of instruction, which allowed Plaintiff to graduate with her B.S. degree on time and without interruption.

For the above reasons, the Court should dismiss Plaintiff's tuition breach of contract claim with prejudice.

**B.  Plaintiff's Breach of Contract Claim Must Be Dismissed Because New York Courts Do Not Recognize Claims for "Educational Malpractice"**

Plaintiff's breach of contract claim also must be dismissed because it runs afoul of New York's steadfast refusal to recognize claims of "educational malpractice."  The courts have

178530.1 10/16/2020

repeatedly stated that "a student may not seek to avoid this rule by couching such a claim as a breach of contract claim." *Papelino*, 633 F.3d at 93. *See also Gally*, 22 F. Supp. 2d at 206-07 ("Where the essence of the complaint is that the school breached its agreement by failing to provide an effective education, the complaint must be dismissed as an impermissible attempt to avoid the rule that there is no claim in New York for 'educational malpractice.'" (quoting *André v. MARIST Univ.*, 170 Misc. 2d 893, 896 (2d Dept. 1996)).  Plaintiff's supposed breach of contract claim should be recognized for what it is – a claim for educational malpractice.  Plaintiff alleges that the remote instruction provided by MARIST faculty did not provide as effective and valuable an education as did the on-campus instruction provided prior to the global pandemic.  Complaint, ¶5, 22, 25, 26.

Educational malpractice claims are not recognized in New York because they would require courts to substitute their judgment for that of the academic officials entrusted with administering the state's colleges and universities.  Accordingly, "claims that sound in tort and ask the Court to involve itself in the subjective professional judgments of trained educators will not survive a motion to dismiss merely because the plaintiff couches her claims in terms of breach of contract." *Gally*, 22 F. Supp. 2d at 207. *See also Olsson v. Bd. of Higher Educ.*, 49 N.Y.2d 408, 413 (1980) ("Because such determinations rest in most cases upon the subjective professional judgment of trained educators, the courts have quite properly exercised the utmost restraint in applying traditional legal rules to disputes within the academic community.").

Here, in the face of a global pandemic, and a state-mandated shutdown of in person instruction, MARIST's administrators and faculty exercised their judgment as professional educators, that effective instruction could continue remotely, and that MARIST would award credit to students who completed the work remotely.  Plaintiff asks this Court to evaluate the

178530.1 10/16/2020

instruction MARIST faculty provided and make a different judgment than that made by MARIST's administration.   This is the exact type of review that New York courts have declined to undertake. There is no way for this Court to evaluate the value of the education provided by MARIST other than by substituting its judgment for that of MARIST's administrators and faculty.   In *Paladino v. Adelphi Univ.*, 89 A.D.2d 85 (2d Dept. 1982), the Second Department ordered the dismissal of breach of contract claims against a private elementary school, noting that the claims ran afoul of the refusal by New York courts to entertain claims of educational malpractice.   The Second Department stated:

> Where the essence of the complaint is that the school breached its agreement by failing to provide an effective education, the court is again asked to evaluate the course of instruction.   It is similarly called upon to review the soundness of the method of teaching that has been adopted by an educational institution.   There is nothing novel about a contract action that would permit for judicial intervention into the process of learning.   For in effect, the claim still requires judicial displacement of complex educational determinations made by those charged with the responsibility to instruct the child….
>
> &ast;&ast;&ast;&ast;
>
> The courts should not become engaged in determining the propriety of the course instruction adopted by a private school….Simply put, the courts should refrain from becoming overseers of the learning process.

89 A.D.2d at 89-91.

Although *Paladino* involved a private elementary school, it has been repeatedly cited in the higher education context.   *See, e.g., Habitzreuther*, 2015 U.S. Dist. LEXIS 112209, at *11; Gally, 22 F. Supp. 2d at 206; *André v. MARIST Univ.*, 170 Misc. 2d 893 (2nd Dept. 1996).   In *André*, the Second Department reversed an award of damages entered by the court below, which had ordered a refund of tuition paid for a course at Defendant MARIST University on a breach of contract theory.   The students alleged that the math used by a graduate computer science professor

13

for a programming assignment was at a higher level than they expected based on the course description in the school catalog; and the trial court awarded a refund of tuition after a trial.  The Second Department reversed the lower court's judgment, holding that "the court below improperly engaged in judicial evaluation of a course of instruction that the courts of this State have consistently held is the proper domain of educators and educational institutions entrusted to the task."  170 Misc. 2d at 899.

Accordingly, the breach of contract claim must be dismissed.

C.  **Plaintiff's Breach of Contract Claim for Fees Is Fatally Flawed And Must Be Dismissed**

In addition to tuition, Plaintiff claims she is entitled to recover a pro-rated amount of fees she paid as a MARIST student for various student services.  Complaint, ¶14.  The fee claim is fatally flawed and must be dismissed on several grounds.

First, the fee claim fails for the same reason as the tuition claim: Plaintiff does not allege a specific promise in the Catalog or any other written MARIST document with respect to student fees.  Moreover, these fees are flat per-semester fees that apply regardless of how much or how little a student uses a particular service or receives a particular benefit.[7]  The Complaint also fails to state the terms of the alleged fees contract, e.g., what the fees paid for, how much she paid, what services covered by the fees that were purportedly not provided, etc.  In any event, there was no contract, implied or otherwise respecting fees, and Plaintiff's contract claim for fees fails because she makes no allegations to substantiate the existence of any fee contract.

---

[7]     If, prior to the pandemic, Plaintiff never used the services offered in the student health center, never availed herself of the campus gym or never sought assistance from the MARIST career center, she would not be entitled to a refund for any portion of those fees. They are semester-wide fees unrelated to the actual use, benefits received, or days on campus.

178530.1 10/16/2020

Second, although Plaintiff's Complaint conveniently fails to acknowledge it, it cannot be disputed that *Plaintiff has already received a pro-rated refund for the fees she paid* for Student Activities and Health Services in the Spring 2020 semester. On April 17, 2020, MARIST announced that it was sending out pro-rated refunds for the Spring 2020 semester Housing, Meals, Student Activities, and Health Services fees.  Answer, Exhibit B.  MARIST, at a personal cost of $11 million dollars, voluntarily refunded these pro-rated fees to all students who had paid them. *Id.*  MARIST calculated the pro-rated refunds based upon the time period between March 23 and May 15, 2020, the last day of classes, or 54 of the 117 days of the Spring 2020 semester. *Id.*

In the Spring 2020 semester, Plaintiff only paid fees related to Student Activities and Health Services, $140.00 and $160.00 respectively, and she did not pay any fees associated with Housing or Meals.  Answer, Exhibit C. Plaintiff received a pro-rated refund for those fees as is reflected on her Spring 2020 Tuition and Fees Statement.  Answer, Exhibit C.  Plaintiff received $74.00 in a Health Services Fee refund and $65.00 in a Student Activity Fee refund.  *Id.* These refund amounts are pro-rated based upon the 54 days that students were not on campus. Answer, Exhibit B.  In addition, these refund amounts were provided to all students who paid fees for Health Services or Student Activities. *Id.*   Plaintiff, nor the proposed putative class, can allege a claim for pro-rated fees, as they have all already received a refund for the respective fees they paid.

Third, it also cannot be disputed that MARIST continued to provide paid for services covered by the fees even after issuing the pro-rated refund.  Specifically, MARIST continued for example to provide resources to students through the Library, the Academic Learning Center, the Center for Academic Advising Services, the Office of Accommodations and Accessibility, and the Writing Center.  Answer, Exhibit D.

178530.1 10/16/2020

Therefore, Plaintiff's breach of contract claim for fees fails and should be dismissed with prejudice.

## POINT II

## PLAINTIFF'S UNJUST ENRICHMENT CLAIM MUST BE DISMISSED

Plaintiff's second claim is for unjust enrichment.  Plaintiff alleges that she paid tuition and fees for "in-person educational services" and that MARIST will be unjustly enriched if it retains Plaintiff's tuition.  Complaint, ¶¶57-62.  A claim for unjust enrichment requires that a plaintiff "establish 1) that the defendant benefitted; 2) at the plaintiff's expense; and 3) that 'equity and good conscience' require restitution."  *Kaye v. Grossman*, 202 F.3d 611, 616 (2d Cir. 2000) (citation omitted).

Plaintiff's unjust enrichment claim must be dismissed because it is nothing more than a restatement of her breach of contract claims. *See, e.g., Jeffers v. American Univ. of Antigua*, 125 A.D.3d 440, 443 (1st Dept. 2015) ("Plaintiffs' unjust enrichment claims are 'indistinguishable from [their] … claim[s] for breach of contract, and must be dismissed as duplicative of the contract claim[s]'" (citation omitted)).  In *Jeffers*, nursing students commenced an action against their school after they were delayed in taking their licensing exam.  They alleged that the school's bulletins, circulars and handbooks formed an implied contract that they would be eligible to sit for the licensing exam upon graduation from the school.  The First Department dismissed the unjust enrichment claim as duplicative of the implied contract.  *Id.*

Even if Plaintiff's unjust enrichment claim was not barred by the existence of an implied contract, she has alleged no facts showing that "equity and good conscience" requires a refund of tuition.  MARIST's actions were not taken on a whim; rather they were taken to protect the health of its students, faculty and staff during the pandemic, and as required by orders of New York State.

Moreover, Plaintiff does not allege that MARIST's faculty failed to provide her with the instruction in her courses during the balance of the Spring Term.  Nor does she allege that MARIST did not pay its faculty members for providing that instruction.  MARIST did not pocket a pile of money when it was forced to close the campus.  It continued to pay its faculty members and incur the usual expenses of operating an educational institution, plus additional expenses to address the pandemic.  MARIST continued other vital services albeit often through remote means.  Plaintiff chose to continue at MARIST after the announcement of the move to online instruction, and she earned credits and has graduated with a B.S. degree in her chosen field of study.  Nothing in equity or good conscience requires a refund of tuition or fees.  Accordingly, Plaintiff's unjust enrichment claims must be dismissed with prejudice.

## POINT III

## PLAINTIFF'S CONVERSION CLAIM MUST BE DISMISSED

Like Plaintiff's unjust enrichment claim, a claim for conversion "cannot be predicated on a mere breach of contract." *Jeffers*, 125 A.D.3d at 443.  Instead, "[f]or a conversion claim to succeed in the context of a dispute regarding a contract, the breach of contract must result in some 'wrong' that is separately actionable." *Citadel Mgmt., Inc. v. Telesis Tr., Inc.*, 123 F. Supp. 2d 133, 148 (S.D.N.Y. 2000); *see also Fesseha v. TD Waterhouse Inv. Servs., Inc.*, 305 A.D.2d 268, 269 (1st Dep't 2003) (rejecting conversion claim where it "alleged no independent facts sufficient to give rise to tort liability" beyond those asserted in connection with contract claim).

Moreover, Plaintiff's conversion claim fails because the general rule in New York is that "'an action for conversion will not normally lie' when it involves intangible property because there is no physical item that can be misappropriated." *Thyroff v. Nationwide Mut. Ins. Co.*, 8 N.Y.3d

283, 289 (2007) *quoting Sporn v. MCA Records*, 58 N.Y.2d 482, 489 (1983)); *accord Matzan v. Eastman Kodak Co.*, 134 A.D.2d 863, 864 (4th Dep't 1987) ("A claim for conversion does not lie for the withholding of indefinite, intangible and incorporeal species of property.").

Here, as stated, the Plaintiff is asking the Court to conduct an evaluation of MARIST's remote instruction during the second half of the Spring 2020 Semester, arrive at a judgment of its value, and order a reimbursement of tuition based on this evaluation.  This type of calculation bears no resemblance to tangible property. Instead, it is an "indefinite, intangible and incorporeal species of property," that cannot be the subject of a conversion action *See Matzan,* at 864.  *See also  Chung v Sano*, 2011 U.S. Dist. LEXIS 34989, at *25, *27 (E.D.N.Y. Mar. 31, 2011) (noting that "stock interests" cannot be converted).   Plaintiff's conversion claim thus fails because conversion of money will fail where, as here the money is not "specifically identifiable and segregated.  *Shafferman v. Queens Borough Pub. Lib. (In re JMK Constr. Group, Ltd.)*, 502 BR 396, at 414  (Bankr S.D.N.Y. 2013); *see also Global View Ltd. Venture Capital v. Great Cent. Basin Exploration, L.L.C.*, 288 F. Supp. 2d 473, 480 (S.D.N.Y. 2003) (dismissing cause of action for conversion where "complaint merely refer[red] to unspecified monies and assets . . . in an amount in excess of $75,000" and where there was "no indication of an identifiable fund or otherwise segregated amount, nor . . . any description of the alleged transfer or transfers from which the Court could infer a specifically identified fund of money").

Therefore, the Court should dismiss Plaintiff's conversion claim with prejudice.

## POINT IV

## PLAINTIFF'S MONEY HAD AND RECEIVED CLAIM MUST BE DISMISSED

"The essential elements for a cause of action for money had and received are (1) the defendant received money belonging to the plaintiff, (2) the defendant benefitted from receipt of the money, and (3) under principles of equity and good conscience, the defendant should not be permitted to keep the money. The action depends upon equitable principles in the sense that broad considerations of right, justice and morality apply to it." *Litvinoff v Wright,* 150 A.D.3d 714, 716 (2d Dept 2017) *citing Goel v Ramachandran,* 111 A.D.3d 783, 790 (2d Dep't 2013). "Traditionally, the remedy for money had and received is available 'if one man has obtained money from another, through the medium of oppression, imposition, extortion, or deceit, or by the commission of a trespass.'" *Panix Promotions, Ltd. v. Lewis,* No. 01-Civ-2709, 2002 U.S.Dist. LEXIS 7176, *7 (S.D.N.Y. Jan. 22, 2002) quoting *Miller v. Schloss*, 218 N.Y. 400, 408, 113 N.E. 337 (1916)). Such an action has succeeded "where plaintiff has paid money by mistake, money has been collected for an illegal tax or assessment, or property is erroneously taken or withheld by a public official." *Parsa v. State,* 64 N.Y.2d 143, 149 (1984) (citing examples of actions for money had and received). Courts have found that plaintiffs lack the requisite possessory interest in money where, as here, it was freely given to a defendant with the expectation of performance. *Panix,* at *8. *Nat'l Westminster Bank PLC v. Grant Prideco, Inc.,* 261 F. Supp.2d 265, 275 n. 69 (S.D.N.Y. 2003).

Plaintiff's money had and received claim is fatally flawed. Specifically, none of Plaintiff's allegations show that MARIST received money that was not owed to it and which equity and good conscience require it to return to Plaintiff. Thus, Plaintiff has not alleged – nor can she – "oppression, imposition, extortion or deceit" by MARIST. *Id.* This is a high bar to overcome, and Plaintiff cannot make it. Not surprisingly, most plaintiffs cannot do so, which is why "money had

178530.1 10/16/2020

and received claims" are routinely subject to successful motions to dismiss.  *See, e.g.,  Panix,* at *3, *11; *Traffix, Inc. v Herold*, 269 F Supp 2d 223 (SDNY 2003); *Fischer v Graham*, 2016 U.S. Dist. LEXIS 72749 (S.D.N.Y. June 3, 2016); *Charles Ramsey Co. v Fabtech-NY LLC*, 2020 U.S. Dist. LEXIS 9348 (N.D.N.Y. Jan. 21, 2020).

When the Spring semester started MARIST had every intention of providing in-person on campus instruction through the semester, and in fact that is exactly what it was doing, until the State mandated order to shutdown was issued. Thereafter, to ensure continuity of learning, MARIST very quickly pivoted to online instruction.  Plaintiff and the putative class continued to receive instruction in their chosen courses by MARIST faculty. The tuition and fees for the Spring semester were not a windfall to MARIST. Indeed, MARIST not only continued to pay its faculty and incur the usual operating costs, but it also incurred additional expenses to address the pandemic.

For all of the above reasons, the Court should dismiss Plaintiff's money had and received claim with prejudice.

178530.1 10/16/2020

## **CONCLUSION**

The Court should grant judgment pursuant to Rule 12(b)(6) dismissing the Complaint in its entirety with prejudice.

Dated:  October 16, 2020

BOND, SCHOENECK & KING, PLLC


By: _____/s/_____
        Gregory B. Reilly
        Aisling McAllister
        Samuel Dobre
*ATTORNEYS FOR DEFENDANT*
MARIST COLLEGE
600 Third Avenue, 22nd Floor
New York, NY 10016
(646) 253-2330
greilly@bsk.com

21