```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------x
MELANIE FEDELE, individually and on            :
behalf all others similarly situated,          :
                        Plaintiff,             :     OPINION AND ORDER
v.                                             :
                                               :     20 CV 3559 (VB)
MARIST COLLEGE,                                :
                        Defendant.             :
--------------------------------------------------------------x
NICKESHA THOMAS and NOAH ZACCO,                :
individually and on behalf of all others       :
similarly situated,                            :
                        Plaintiffs,            :
                                               :     20 CV 3584 (VB)
v.                                             :
                                               :
MERCY COLLEGE,                                 :
                        Defendant.             :
--------------------------------------------------------------x
```

Briccetti, J.:

Plaintiff Melanie Fedele brings a putative class action against defendant Marist College, and plaintiffs Nickesha Thomas and Noah Zacco (the "Mercy plaintiffs") bring a separate putative class action against defendant Mercy College, both of which allege claims for breach of contract, unjust enrichment, conversion, and money had and received.

Now pending are Marist's motion to dismiss Fedele's amended complaint, pursuant to Fed. R. Civ. P. 12(b)(6) (20 CV 3559, Doc. #26), and Mercy's motion for judgment on the pleadings with respect to the Mercy plaintiffs' second amended complaint, pursuant to Fed. R. Civ. P. 12(c).  (20 CV 3584, Doc. #35).

Although the cases are not formally consolidated, because the two motions raise very similar issues, the Court will address the motions together in the interest of judicial economy.

For the following reasons, both motions are GRANTED.

1

Plaintiffs allege the Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d)(2).[1]

## BACKGROUND

For the purpose of ruling on the motions, the Court accepts as true all well-pleaded factual allegations in Fedele's amended complaint ("Marist AC") and the Mercy plaintiffs' second amended complaint ("Mercy SAC") and draws all reasonable inferences in plaintiffs' favor, as summarized below.

On March 13, 2020, after the novel coronavirus ("COVID-19") arrived in the United States, President Donald J. Trump issued Proclamation 9994, declaring that the COVID-19 outbreak in the United States constituted a national emergency.  On March 18, 2020, New York Governor Andrew M. Cuomo issued Executive Order 202.6, mandating a statewide shutdown of non-essential businesses beginning on March 22, 2020.  As a result, many colleges and universities in New York temporarily transitioned to online classes and ceased various in-person activities and services.  A multitude of lawsuits brought by students seeking a partial refund of their tuition and fees for the spring 2020 semester followed, including the instant actions.

I.   Marist College

Marist College is a private liberal arts college located in Poughkeepsie, New York. Plaintiff Melanie Fedele alleges that during the spring 2020 semester, she was an undergraduate

---

[1] The Class Action Fairness Act ("CAFA") confers subject matter jurisdiction over certain class actions with an amount in controversy of at least $5 million, when the class exceeds 100 individuals, and the parties are minimally diverse.  28 U.S.C. § 1332(d).  Because the Court presumes Fedele's amended complaint and the Mercy plaintiffs' second amended complaint set forth good faith representations of the amounts in controversy, and because defendants do not argue there is a legal certainty that the amounts recoverable are less than $5 million, the Court resolves any doubt in favor of plaintiffs and finds subject matter jurisdiction under CAFA is adequately alleged at this stage of the case.  See Chase Manhattan Bank, N.A. v. Am. Nat. Bank & Tr. Co. of Chicago, 93 F.3d 1064, 1070 (2d Cir. 1996).

at Marist pursuing a bachelor's degree in business administration and fashion merchandising. Fedele claims she paid approximately $20,860 in tuition and fees to Marist for the spring 2020 semester.

Fedele also alleges that in exchange for tuition and fees, Marist agreed to provide students with in-person education, experiences, and related services, which it did for the first half of the spring 2020 semester. However, according to Fedele, on March 16, 2020, Marist President Dennis J. Murray announced that because of the global COVID-19 pandemic, beginning Monday, March 30, 2020 (the first day back from spring break) all classes for the remainder of the spring 2020 semester would be held remotely. Fedele alleges Marist has not held in person classes since before the students left for spring break on March 13, 2020. She claims that classes have been offered in only an online format, with no in-person instruction.

Fedele further alleges Marist has not refunded any tuition for the spring 2020 semester and, although Marist has offered students the ability to apply for a refund of some fees, it neither offered a refund of all fees, nor automatically processed all available refunds.

II.     Mercy College

Mercy College is a private college located in Dobbs Ferry, New York. Plaintiff Nickesha Thomas alleges that during the spring 2020 semester, she was an undergraduate at Mercy pursuing a bachelor's degree in nursing. Thomas claims she paid approximately $6,907 in tuition and fees to Mercy for the spring 2020 semester, including a $430 General Student Fee, a $1,072 Nursing Exam Fee, and a $213 Student Activity Fee.

Plaintiff Noah Zacco alleges he was an undergraduate at Mercy for the spring 2020 semester pursuing a bachelor's degree in criminal justice. Zacco claims he paid approximately $5,000 in tuition and fees to Mercy for the spring 2020 semester.

The Mercy plaintiffs allege that in exchange for tuition and fees, Mercy agreed to provide its students with in-person education, experiences, and related services, which it did for the first half of the spring 2020 semester. However, the Mercy plaintiffs allege that on March 18, 2020, Mercy announced that classes would transition to an online format and residential housing would close March 29, 2020, through the end of the spring 2020 semester. According to the Mercy plaintiffs, Mercy has not held any in-person classes since March 10, 2020, and classes that have continued have only been offered in an online format, with no in-person instruction.

The Mercy plaintiffs allege they have neither been provided a refund of any tuition for the spring 2020 semester nor been offered a refund for all the fees they paid for the same.

**DISCUSSION**

I.  Standard of Review

In deciding a Rule 12(b)(6) motion, the Court evaluates the sufficiency of the operative complaint under the "two-pronged approach" articulated by the Supreme Court in Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009).[2] First, a plaintiff's legal conclusions and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not entitled to the assumption of truth and are thus not sufficient to withstand a motion to dismiss. Id. at 678; Hayden v. Paterson, 594 F.3d 150, 161 (2d Cir. 2010). Second, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Ashcroft v. Iqbal, 556 U.S. at 679.

To survive a Rule 12(b)(6) motion, the allegations in the complaint must meet a standard of "plausibility." Ashcroft v. Iqbal, 556 U.S. at 678; Bell Atl. Corp. v. Twombly, 550 U.S. 544, 564 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows

---

[2]   Unless otherwise indicated, case quotations omit all internal citations, quotations, footnotes, and alterations.

4

the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. at 678. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. (quoting Bell Atl. Corp. v. Twombly, 550 U.S. at 556).

When ruling on a motion to dismiss, the Court need not accept as true "factual assertions that are contradicted by the complaint itself, by documents upon which the pleadings rely, or by facts of which the court may take judicial notice." Perry v. NYSARC, Inc., 424 F. App'x 23, 25 (2d Cir. 2011) (summary order); see also, e.g., Hirsch v. Arthur Andersen & Co., 72 F.3d 1085, 1095 (2d Cir. 1995) (refusing to credit "attenuated allegations" "contradicted both by more specific allegations in the Complaint and by facts of which [the Court] may take judicial notice").

"The standard for addressing a Rule 12(c) motion for judgment on the pleadings is the same as that for a Rule 12(b)(6) motion to dismiss for failure to state a claim." Cleveland v. Caplaw Enters., 448 F.3d 518, 520 (2d Cir. 2006).

II.   Breach of Contract Claims

Marist and Mercy argue that plaintiffs fail plausibly to allege a breach of contract claim. The Court agrees.

   A.   Applicable Law

"[A] breach of contract claim requires proof of (1) an agreement, (2) adequate performance by the plaintiff, (3) breach by the defendant, and (4) damages." Fischer & Mandell LLP v. Citibank, N.A., 632 F.3d 793, 799 (2d Cir. 2011). Under New York law, there exists an implied contract between a student and their college or university, which is "formed when a university accepts a student for enrollment." Papelino v. Albany Coll. of Pharmacy of Union

5

Univ., 633 F.3d 81, 93 (2d Cir. 2011). "[I]f the student complies with the terms prescribed by the university and completes the required courses, the university must award him a degree." Id. "The rights and obligations of the parties as contained in the university's bulletins, circulars and regulations made available to the student, become a part of this contract." Vought v. Teachers Coll., Columbia Univ., 127 A.D.2d 654, 654 (2d Dep't 1987). "In order to state a claim for breach of such a contract, a student must identify specifically designated and discrete promises." Nungesser v. Columbia Univ., 169 F. Supp. 3d 353, 370 (S.D.N.Y. 2016). "General policy statements and broad and unspecified procedures and guidelines will not suffice." Id. In addition, "to state a valid claim for a breach of contract against a university, a student must state when and how the defendant breached the specific contractual promise." In re Columbia Tuition Refund Action ("In re Columbia"), ---F. Supp. 3d----, 2021 WL 790638, at *3 (S.D.N.Y. Feb. 26, 2021).

      B.    Educational Malpractice Doctrine

As a threshold matter, Marist and Mercy argue plaintiffs' breach of contract claims must be dismissed because they run afoul of New York's bar on "educational malpractice" claims.

The Court is not persuaded.

"Educational malpractice claims, which ask the Court to involve itself in the subjective professional judgments of trained educators, are not cognizable under New York law." Amable v. New School, 2021 WL 3173739, at *3 (S.D.N.Y. July 27, 2021). This policy is based on the presumption that courts should not substitute their own judgment for academic officials who are "uniquely capable of deciding what is appropriate and necessary for educational institutions to function." Id.

6

Here, some of plaintiffs' allegations bear a resemblance to educational malpractice claims—particularly those that explicitly compare the alleged quality of in-person versus online courses.  For example, plaintiffs in both cases allege the "online learning options being offered to . . . students are subpar in practically every aspect and a shadow of what they once were."  (20 CV 3559, Doc. #21 ("Marist AC") ¶ 32; 20 CV 3584, Doc. #31 ("Mercy SAC") ¶ 37).[3]  Plaintiffs also claim the "remote learning options are in no way the equivalent of the in-person education that Plaintiff[s] and the putative class members contracted and paid for."  (Marist AC ¶ 11; Mercy SAC ¶ 15).  Finally, plaintiffs allege defendants should return a pro-rated share of the tuition and fees paid by plaintiffs and the putative class members proportionate to the amount of time that remained in the spring 2020 semester when classes transitioned to online and campus services were canceled, which would require the Court to make a determination as to the comparative worth of the offered in-person and online classes.

Despite this resemblance, plaintiffs' breach of contract claims do not "run[] afoul of New York's steadfast refusal to recognize claims of 'educational malpractice.'"  (20 CV 3559, Doc. #27 at ECF 16).[4]  Rather, plaintiffs' principal claims are that Marist and Mercy breached contractual obligations set forth in course catalogs, course bulletins, and class schedule searches to "provide in-person educational services, experiences, opportunities, and other related

---

[3]   Plaintiffs in both actions are represented by the same counsel, and the allegations in their complaints include largely identical language.

Plaintiffs' counsel also represented the plaintiffs in Amable v. New School, 2021 WL 3173739, at *4 (S.D.N.Y. July 27, 2021), and Hassan v. Fordham Univ., ---F. Supp. 3d----, 2021 WL 293255, at *2–4 (S.D.N.Y. Jan. 28, 2021), opinion amended and superseded in part, 2021 WL 1263136 (S.D.N.Y. Apr. 6, 2021).  Although these district court decisions are not binding on this Court, they address identical allegations and many of the same arguments set forth here and provide useful guidance that this Court finds persuasive.

[4]   "ECF __" refers to page numbers automatically assigned by the Court's Electronic Case Filing system.

services." (Marist AC ¶ 3; Mercy SAC ¶ 53). In deciding whether these claims survive the instant motions, the Court need not "substitute [its] judgment for that of university officials." Sirohi v. Lee, 222 A.D.2d 222, 222 (1st Dep't 1995).

Courts considering identical allegations drafted by the same counsel have refused to dismiss complaints as prohibited educational malpractice claims. In so concluding, the courts in Amable v. New School and Hassan v. Fordham Univ. both noted that "the essence of [p]laintiffs' [complaints] [are] claim[s] that Defendant[s] made—and then breached—a specific promise to provide in-person teaching and other learning opportunities." Amable v. New School, 2021 WL 3173739, at *4 (discussing Hassan v. Fordham Univ., 2021 WL 293255). Thus, the main question in those cases, as here, is whether defendants' publications contained a specific promise to provide in-person instruction. In Amable v. New School, the court further explained:

> To determine whether the Course Catalog and other documents stated a specific promise to provide in-person instruction, the Court need not question the judgments of educational professionals, and thus, Plaintiffs' claims are not barred by the educational malpractice doctrine, because they are sufficiently grounded in whether an alleged promise for educational services was made and breached.

Id. at *4; see also In re Columbia, 2021 WL 790638, at *6 ("The Court . . . joins the majority of district courts around the country that have declined to hold, at least on a motion to dismiss (or judgment on the pleadings), that claims arising from universities' adoption of online instruction in response to the COVID-19 pandemic are barred under the educational malpractice doctrine.").

Accordingly, the Court declines to dismiss plaintiffs' claims as barred by the educational malpractice doctrine.

C. Breach of Contract Claim Against Marist College

Fedele fails plausibly to allege a breach of contract claim because she identifies no specific contractual promise by Marist to provide in-person educational instruction in exchange for students' tuition and fees.

8

        1.        <u>Specific Promises</u>

Although Fedele claims Marist's "Class Schedule Search" function, "Course Registration" function, and Course Catalog, contained specific promises "to provide in-person educational services, experiences, opportunities, and other related services" (Marist AC ¶ 46), that assertion is contradicted by the statements to which she points. First, Fedele contends that Marist's "Class Schedule Search" and "Class Registration" functions specifically allow students to search for classes based on "Schedule Type," which includes options for "Lecture" as opposed to "On Line Class." (Marist AC ¶¶ 5, 16). However, the classification of instruction modes "does not imply a contractual entitlement to continued instruction in the same . . . manner." <u>In re Columbia</u>, 2021 WL 790638, at *4. Indeed, allegations that universities provided students with the ability to search for courses based on whether they were taught in person or online are insufficient to demonstrate a specific promise to provide an in-person educational experience. <u>See</u> e.g., <u>Amable v. New School</u>, 2021 WL 3173739, at *6; <u>Morales v. New York University</u>, 2021 WL 1026165, at *2 (S.D.N.Y. Mar. 17, 2021).

Second, Fedele alleges that Marist's "Class Registration" function and detailed class schedules in the Course Catalog confirm the in-person nature of Marist's classes by providing the class's campus location, days, times, building, room number, and instructor. (Marist AC ¶¶ 6, 7). However, as the court in <u>In re Columbia</u> explained, "references to classroom locations . . . in [a university's] syllabi, departmental policies and handbooks, and course registration portal" do not "imply a contractual entitlement to continued instruction in the same location and manner. . . . They merely memorialize the pre-pandemic practice; they offered no guarantee that it would continue indefinitely." <u>In re Columbia</u>, 2021 WL 790638, at *4; <u>see also</u> <u>Hassan v. Fordham Univ.</u>, 2021 WL 1263136, at *4 (holding course catalog descriptions containing a course's

9

instructor, location, and schedule were not comparable to specific promises to provide a particular number of instructional hours or facilities of a certain level).

Third, Fedele alleges that Marist's Faculty Handbook references the in-person nature of classes for the spring 2020 semester by requiring its faculty members to be on campus for office hours. Specifically, the Faculty Handbook states that faculty should "be in his/her office and available to students" five hours a week. (Marist AC ¶ 8). This allegation similarly fails to identify a specific promise to provide in-person educational services. The handbook does not contain a promise that students are entitled to meet with faculty in their offices on campus nor does Fedele allege that any member of Marist's faculty was unavailable to meet with her during the spring 2020 semester.[5]

### 2. Prior Course of Conduct

Fedele also alleges that "the parties' prior course of conduct" evinces an implied contract whereby Marist agreed to provide in-person instruction. (20 CV 3559, Doc. #29 ("Fedele Opp.") at ECF 17). Specifically, Fedele argues that the in-person instruction and access to campus facilities Marist provided prior to the pandemic demonstrates that "the parties had a meeting of the minds for students to take in-person classes and have the many benefits of access to Marist's

---

[5] Both Fedele and the Mercy plaintiffs allege that defendants "markets the [Marist/Mercy] on-campus experience as a benefit of enrollment on [the college's] website." (Marist AC ¶ 31; Mercy SAC ¶ 36). Defendants argue such "aspirational goals in documents published by colleges and universities" are insufficient to form an implied contract. (20 CV 3559, Doc. 27 at ECF 10; 20 CV 3584, Doc. # 36 at ECF 20). In their oppositions, plaintiffs do not argue the colleges' promotion of the benefits of an on-campus experience constituted a specific promise to provide in-person educational instruction. Rather than address this argument, plaintiffs merely assert that their allegations, taken as a whole, are sufficient to establish a contract. The Court disagrees. Furthermore, "references in [college and universities'] marketing materials to 'the on-campus experience' are not sufficient to support a claim. Many of these references are mere opinion or puffery that [are] too vague to be enforced as a contract." In re Columbia, 2021 WL 790638, at *4.

physical campus for the entire semester." (Id.). This argument is unavailing. "[T]he fact that [a university] provided in-person instruction in [p]laintiffs' courses before March 2020 does not imply a contractual entitlement to continued instruction in the same location and manner." In re Columbia, 2021 WL 790638, at *4. Rather, a student alleging breach of an implied contract against a university "must identify specifically designated and discrete promises." Nungesser v. Columbia Univ., 169 F. Supp. 3d at 370 (emphasis added). And, as the court in Hassan v. Fordham Univ. stated, "prior conduct in the educational setting does not transform over time into contractual entitlement." 2021 WL 293255, at *7. Thus, Fedele's allegation that the parties' course of conduct prior to the pandemic creates an implied contract to provide in-person classes falls short of identifying a specific promise to provide in-person instruction needed to support her breach of contract claim.

        3.      Fees

Finally, as to Fedele's allegation that she should be reimbursed for certain fees Marist collected, the AC states "while Marist has offered students the ability to apply for a refund of some fees, it has not offered a refund of all fees, nor did it automatically process refunds." (Marist AC ¶ 12). Fedele does not, however, allege what fees she paid and what fees Marist has reimbursed. Fedele's conclusory allegation is insufficient to sustain her claim for breach of contract for failure to reimburse certain fees. In addition, there is no reference in Fedele's opposition brief to Marist's argument that Fedele fails to allege a breach of contract claim for its retention of certain fees. Thus, Fedele is deemed to have abandoned this claim. See Lipton v. County of Orange, NY, 315 F. Supp. 2d 434, 446 (S.D.N.Y. 2004) ("[A] [c]ourt may, and generally will, deem a claim abandoned when a plaintiff fails to respond to a defendant's arguments that the claim should be dismissed.").

11

Accordingly, Fedele's breach of contract claim must be dismissed.

D.     Breach of Contract Claim Against Mercy College

The allegations against Mercy in the Mercy plaintiffs' SAC are substantially similar to those Fedele brings against Marist.  And, like Fedele, the Mercy plaintiffs fail plausibly to allege a breach of contract claim because they fail to identify any specific contractual promise by Mercy to provide in-person educational instruction.

1.     Specific Promises

First, the Mercy plaintiffs point to a number of university publications they contend contain specific contractual promise by Marist to provide an in-person educational experience, including Mercy's Class Schedule Search function, Spring Semester 2020 Course Catalog, Course Bulletin, and Class Schedule Listings.  Like Fedele, the Mercy plaintiffs allege Mercy's "Class Schedule Search function specifically allows students to search for classes . . . based on 'Instructional Method,' which . . . includes an option for 'In-Person On-Campus' [courses]." (Mercy SAC ¶ 7).  The Mercy plaintiffs also allege Mercy's Course Catalog, Course Bulletin, and Class Schedule Listings confirmed the in-person nature of classes.  Specifically, they allege the "Course Catalog . . . provided descriptions of all courses available, yet it did not contain any indication that courses would be taught remotely." (Id. ¶ 5).  They further allege Mercy's "Course Bulletin" and "Class Schedule Listings" confirmed the in-person nature of the classes by providing campus location, meeting time, instructor, and the format in which the course was to be held. (Id.).  As discussed above, the ability to search for classes based on instruction mode and information about a class's location and time "merely memorialize the pre-pandemic practice; they offer[] no guarantee that [in-person instruction] would continue indefinitely." In re Columbia, 2021 WL 790638, at *4.

The Mercy plaintiffs also argue that Mercy's Faculty Handbook contains specific promises to provide students with an in-person education. According to the Mercy plaintiffs, the handbook states "[f]aculty are required to be reasonably available to students outside the classroom for purposes of assisting them with coursework and providing academic advisement. Such access may involve a combination of office hours, responsiveness to e-mail, and presence on campus." (Mercy SAC ¶ 10). This statement contains no promise that students will be provided with in-person access to faculty on campus nor do the Mercy plaintiffs allege any faculty was not reasonably available to them during the spring 2020 semester.

        2.        Prior Course of Conduct

Like Fedele, the Mercy plaintiffs allege that the parties' prior course of conduct demonstrates the existence of an implied contract between Mercy and its students to provide an in-person education. As discussed above, "prior conduct in the educational setting does not transform over time into contractual entitlement." Hassan v. Fordham Univ., 2021 WL 293255, at *7. Thus, the Mercy plaintiffs' allegations regarding the parties' prior course of conduct do not support their claim for breach of contract.

        3.        Fees

Finally, the Mercy plaintiffs allege they are entitled to a refund of the fees they paid for services, facilities, access, and opportunities that Mercy did not provide as a result of canceling in-person classes and closing campus facilities. Specifically, they claim Thomas paid a $430 General Student Fee, a $1,072 Nursing Exam Fee, and a $213 Student Activity Fee, which, according to the Mercy plaintiffs, were meant to support and provide access to in-person, on-campus experiences, facilities, and events. These conclusory allegations are insufficient to allege a claim for breach of contract as they fail to identify a specific promise by Mercy to

13

provide "in-person, on-campus experiences, facilities, events, etc." (Mercy SAC ¶ 19) in exchange for these fees.

The Mercy plaintiffs' allegations are unlike the claims for breach of contract regarding student fees asserted in In re Columbia, which the court refused to dismiss. There, the Columbia plaintiffs alleged they paid a "Facilities Fee," which the university described as the fee for "access to the facilities at the Dodge Physical Fitness Center and Lerner Hall," and a "Health and Related Services Fee," which provided them "access [to] the programs and services provided through Columbia Health's five departments, including 24/7 support from Counseling & Psychological Services, Medical Services, and Sexual Violence Response." In re Columbia, 2021 WL 790638, at *6. By contrast, the Mercy plaintiffs rely on conclusory allegations that the fees Thomas paid were intended to support and provide access to in-person, on-campus experiences, facilities, and events without identifying a specific promise to provide those services in exchange for the alleged fees.

Accordingly, the Mercy plaintiffs' breach of contract claim must be dismissed.

III.    Unjust Enrichment Claims

In the alternative to their breach of contract claims, plaintiffs in both cases bring a claim for unjust enrichment. Defendants argue plaintiffs' unjust enrichment claims must be dismissed because they merely restate plaintiff's claims for breach of contract.

The Court agrees.

To plead unjust enrichment under New York law, "the plaintiff must allege that (1) the other party was enriched, (2) at that party's expense, and (3) that it is against equity and good conscience to permit the other party to retain what is sought to be recovered." Georgia Malone & Co., Inc. v. Reider, 19 N.Y.3d 511, 516 (2012). "The essence of such a claim is that one party

14

has received money or a benefit at the expense of another." Kaye v. Grossman, 202 F.3d 611, 616 (2d Cir. 2000).

Under New York law, "[u]njust enrichment claims are available only in unusual situations when, though the defendant has not breached a contract . . . , circumstances create an equitable obligation running from the defendant to the plaintiff, such as when the defendant, though guilty of no wrongdoing, has received money to which he or she is not entitled." In re Columbia, 2021 WL 790638, at *9 (S.D.N.Y. Feb. 26, 2021) (quoting Corsello v. Verizon N.Y., Inc., 18 N.Y.3d 777, 790 (2012)).  "An unjust enrichment claim is not available where it simply duplicates, or replaces, a conventional contract . . . claim." Id.

Plaintiffs' unjust enrichment claims fail because they are based on the same factual allegations underlying their breach of contract claims.  Specifically, plaintiffs allege that defendants were unjustly enriched when they retained the tuition and other fees plaintiffs paid for the spring 2020 semester despite failing to provide the in-person educational services, experience, and services for which the tuition and fees were allegedly collected.  Plaintiffs provide no explanation as to how their unjust enrichment claims differ from their breach of contract claims.  See Amable v. New School, 2021 WL 3173739, at *12 (dismissing the unjust enrichment claim when parties did "not dispute that they shared a contractual relationship" and unjust enrichment claim was "indistinguishable from [plaintiff's] contract claim"); Zagoria v. New York Univ., 2021 WL 1026511, at *5 (S.D.N.Y. Mar. 17, 2021) (same).

Plaintiffs argue that at this stage of the litigation, they may plead unjust enrichment in the alternative to their breach of contract claim.  The Court disagrees.  Rather, the Court is persuaded by the reasoning set forth in In re Columbia, in which the court considered and rejected the same argument.  Specifically, the court stated, "courts in this District have previously dismissed unjust

enrichment claims that were indistinguishable from contract claims pleaded in the alternative in the same complaint, at least where the parties did not dispute that they shared a contractual relationship." In re Columbia, 2021 WL 790638, at *9 (collecting cases).  Relying on that decision, other courts in this district have similarly dismissed claims for unjust enrichment.  E.g., Amable v. New School, 2021 WL 3173739, at *12; Hassan v. Fordham Univ., 2021 WL 1263136, at *4.  Here, it is undisputed that an implied contract governs the relationship between plaintiffs and defendants and, as in many of these tuition cases, "[p]laintiffs' unjust-enrichment claim aims to recover the same payments (tuition and fees) as their contract-breach claim and is based on the same allegedly breaching conduct."  Amable v. New School, 2021 WL 3173739, at *12 (citing Goldberg v Pace University, ---F. Supp. 3d----, 2021 WL 1565352, at *12 (S.D.N.Y. Apr. 21, 2021).

Accordingly, plaintiffs' unjust enrichment claims must be dismissed.

IV.     Conversion Claims

Next, defendants argue that plaintiffs fail plausibly to allege claims of conversion.

The Court agrees.

Under New York law, "[a] conversion takes place when someone, intentionally and without authority, assumes or exercises control over personal property belonging to someone else, interfering with that person's right of possession."  Colavito v. N.Y. Organ Donor Network, Inc., 8 N.Y.3d 43, 49–50 (2006).  "Money may be the subject of a conversion action only if it is specifically identifiable and segregated and there exists an obligation to return or otherwise treat in a particular manner the specific fund in question."  In re Columbia, 2021 WL 790638, at *9.  Moreover, "for a claim of conversion to survive a motion to dismiss, it is not enough merely to incorporate the factual allegations relating to breach of contract."  Flatscher v. The Manhattan

16

School of Music, 2021 WL 3077500, at *10 (S.D.N.Y. July 20, 2021). "Rather, a conversion claim may only succeed if a plaintiff alleges wrongs and damages distinct from those predicated on a breach of contract." Id.

Plaintiffs' allegations are insufficient to sustain their conversion claims. Plaintiffs claim they have "an ownership right to the in-person education services they were supposed to be provided in exchange for their [tuition and fees]" (Marist AC ¶ 65; Mercy SAC ¶ 73), and that Marist and Mercy "intentionally interfered with [those rights] when [they] moved all classes to an online format and discontinued in-person educational services." (Marist AC ¶ 66; Mercy SAC ¶ 74). According to plaintiffs, Marist and Mercy are therefore obligated to return a "pro-rated portion" of those fees. (Marist AC ¶ 70; Mercy SAC ¶ 78).

First, plaintiffs' conversion claims do not involve identifiable and segregated property that defendants were obligated to return. Indeed, a "pro-rated portion" of plaintiffs' tuition and fees falls far short of the requirement that property subject to a conversion claim be "identifiable and segregated." In re Columbia, 2021 WL 790638, at *9. The funds are not identifiable because it is "impossible to distinguish between tuition funds that covered in-person instruction during the first part of the Spring 2020 semester and those that covered the remote instruction after the onset of the pandemic." Hassan v. Fordham University, 2021 WL 293255, at *11. And the funds are not segregated because plaintiffs "cannot realistically argue that once that money was paid to defendant[,] it remained intact, as opposed to pooling in with defendant's other funding." Id. (citing Ford v. Rensselaer Polytechnic Inst., 2020 WL 7389155, at *9 (N.D.N.Y. Dec. 16, 2020)).

Second, the conversion claims must be dismissed because they are "predicated on a mere breach of contract." In re Columbia, 2021 WL 790638, at *9 (dismissing conversion claims

17

because they were "predicated on a mere breach of contract"); see also Flatscher v. The Manhattan School of Music, 2021 WL 3077500, at *10 (dismissing conversion claims "as duplicative of . . . breach of implied contract claim").

Accordingly, plaintiffs' conversion claims must be dismissed.

V.      Money Had and Received Claims

Finally, defendants argue plaintiffs' claims for money had and received should be dismissed.

The Court agrees.

To state a claim for money had and received under New York law, plaintiff must allege "(1) defendant received money belonging to plaintiff; (2) defendant benefitted from the receipt of money; and (3) under principles of equity and good conscience, defendant should not be permitted to keep the money." Aaron Ferer & Sons Ltd. v. Chase Manhattan Bank, Nat. Ass'n, 731 F.2d 112, 125 (2d Cir. 1984). As with claims for unjust enrichment, there is no claim for money had and received where a contract covers the same subject matter for which relief is sought. Zagoria v. New York Univ., 2021 WL 1026511, at *6; see also Teachers Ins. & Annuity Ass'n v. Wometco Enters., 833 F. Supp. 344, 349 n.9 (S.D.N.Y. 1993) ("[N]o claim for unjust enrichment/money had and received can stand where, as here, a contract covers the same subject matter for which relief is sought").

Here, plaintiffs' money had and received claims must be dismissed because such claims "merely duplicate[] [their] defective breach of contract claim[s]." Amable v. New School, 2021 WL 3173739, at *13.

Accordingly, plaintiffs' claims for money had and received must be dismissed.

VI. <u>Amendment</u>

In their opposition papers, plaintiffs informally request that if the Court "determines [plaintiffs'] allegations are deficient in any respect," the Court grant them leave to further amend their respective complaints. (Fedele Opp. at ECF 32; 20 CV 3584, Doc. #39 at ECF 37). However, plaintiffs have provided no argument regarding why they should be permitted leave to amend, they have submitted no proposed amendments, and they have not indicated what additional facts they intend to allege. Rule 15(a)(2) provides that a party may amend its complaint only with the opposing party's consent or leave of court. Although leave to amend should be "freely give[n] . . . when justice so requires," Fed. R. Civ. P. 15(a)(2), "motions to amend should generally be denied in instances of futility, undue delay, bad faith or dilatory motive . . . or undue prejudice to the non-moving party." <u>Burch v. Pioneer Credit Recovery, Inc.</u>, 551 F.3d 122, 126 (2d Cir. 2008) (citing <u>Foman v. Davis</u>, 371 U.S. 178, 182 (1962)).

Here, because plaintiffs have not submitted proposed amendments or set forth any additional facts they intend to allege, they have not demonstrated that amendment would not be futile. Therefore, plaintiffs' requests for leave to amend are denied. <u>See, e.g.</u>, <u>Acito v. IMCERA Grp., Inc.</u>, 47 F.3d 47, 55 (2d Cir. 1995) (affirming denial of leave to amend when district court "examined plaintiffs' supplementary allegations and determined that the additional information did not cure the complaint"); <u>see also</u> <u>In re Cybershop.com Secs. Litig.</u>, 189 F. Supp. 2d 214, 236 (D.N.J. 2002) (leave to amend denied when plaintiff "failed to proffer any proposed, substantive amendment that would satisfy applicable pleading requirements; indeed, it [did] not suggest any amendment at all").

However, by September 10, 2021, plaintiffs may file further amended complaints if defendants consent or, in lieu of consent, plaintiffs may file formal motions for leave to amend

accompanied by their proposed amended complaints and a redline version comparing each respective operative complaint and proposed amended complaint. Fed. R. Civ. P. 15(a)(2).

## CONCLUSION

Defendant Marist College's motion to dismiss is GRANTED.

Defendant Mercy College's motion for judgment on the pleadings is GRANTED.

By September 10, 2021, plaintiffs may file (i) further amended complaints if consented to by defendants, or (ii) formal motions for leave to amend, including their proposed amended complaints and a redline version comparing each respective operative complaint and proposed amended complaint. If plaintiffs fail to do so, the Court will enter judgment and close the respective case. No extension of this deadline will be granted.

The Clerk is instructed to terminate the motions. (20 CV 3559, Doc. #26; 20 CV 3584, Doc. #35).

Dated: August 10, 2021
White Plains, NY

SO ORDERED:

_____
Vincent L. Briccetti
United States District Judge